Good morning, Your Honor. My name is David Porter, and I represent Kenneth R. Graham, Sr., the appellant and petitioner in the court below. To be liable for the personally armed enhancement, the five-year enhancement, the government must prove that the defendant either knowingly carried or knowingly had available to him the firearms. In this case, the government proved neither. There's no contention that Mr. Graham or actually any of the defendants actually carried the firearms at issue here. No, it comes down to, doesn't it, the firearms in the bedroom with drugs, where drugs were, and in the bedroom is a paddle, wicked, something every way every day or something. That's the evidence connecting him to the bedroom. The sole evidence, Your Honor. And his nickname, there's testimony which wasn't objected to that his nickname was wicked. Yes. And that's it? And the question is, is that sufficient? That's it, Your Honor. Okay. So tell us why it is or isn't sufficient. There are actually two theories that seem to shift during the process of this litigation. The first is the paddle theory, and that's what the trial court relied upon. The trial court granted the motion for acquittal by one of the defendant's co-defendants, Mr. Parker. And in denying the motion for acquittal by Mr. Graham, the court said this. This is the defendant's lawyer. Did Your Honor consider the arming enhancement with regard to indicia against Mr. Graham as well, or did the court consider that at all? The court, I did consider that motion, and the motion was denied as to that. And for the record, would the court's finding be based solely on the fact that a paddle bearing the alleged nickname used by Mr. Graham was found in the room? Yes. Is that the sole indicia used? Court, yes. Well, I must say you had a very cooperative judge. Some judges would just have said, well, I did it because I did it. You figure it out. But he did make clear what his reason was for concluding. We appreciate the lower court's clarity on this matter, Your Honor. But it went on appeal, and the court said there was sufficient evidence, right? Yes, it did. And that's where we get to the shifting theories here. Now we go to the joint enterprise theory that the court of appeal relied on. And, in fact, the warden now is saying that the paddle theory is kind of disavowing the paddle theories as well. The court of appeal didn't consider that as substantial evidence. Well, this joint enterprise theory is both legally and factually incorrect. It's legally incorrect because of the Pomelia case, the case that we cited on page 11 of our opening brief, where the court says the only rational view of the matter is that whatever armed may mean when the legislature mandated a section 12022 subdivision C enhancement for those personally armed, it intended to exclude vicarious liability rather than specify the character of the act. That's not the question, really. Is there enough connection to show – enough evidence to show that he had the connection with the bedroom, not that he's liable because someone else did? That's correct, Your Honor. But the court of appeal very clearly said we're not – the Respondent is saying now the court of appeal is not relying on the paddle anymore. They're relying on a joint enterprise theory of liability, that because the co-defendants knew about the gun and because there were drugs in there and Mr. Graham was convicted of drugs, he must have known about the guns that were hidden beneath the box frame and the mattress in the master bedroom that was 12 to 15 feet away from where he was arrested in the front room. Was he found responsible for the drugs in the bedroom? No, Your Honor. Okay. No. In fact, their expert testified that each of the defendants – each of the male defendants possessed upon him a saleable quantity of raw cocaine. There are 3.5 grams, I believe, at the feet of Mr. – that were found at the feet of Mr. Graham. And another room. I'm sorry. 3.1 grams of cocaine found at the feet of Mr. Graham. 3.9 grams of cocaine found in the master bedroom that was attributed to Tyrone Wright. 7.8 grams of cocaine that was attributed to Melvin Parker that was found floating, swimming around in the toilet, as the officer said. Is this John Enterprise theory under California law similar to the Pinkerton theory from the Supreme Court? I don't believe so, Your Honor. Why not? Well, first of all, we're talking about two different things. Pinkerton liability refers to liability for a substantive crime of conspiracy. Here we're talking about a sentencing enhancement. There are four sentencing enhancements in 12022 of the California Penal Code. Subdivision C, the only one we're talking about here, prohibits vicarious liability. It says you must be personally armed, and there's a five-year enhancement. For subdivision A, which does allow for vicarious liability, it's a one-year enhancement. For subdivision D, which also allows for vicarious liability, there is a one, two, or three-year enhancement. But this is the only enhancement that carries up to five years. It's three, four, or five years, and the government must prove under Pomelia, under Bland, the primary case that the respondent relies upon, and Bernie Whitkin, of all people, says that this requires personal use of a firearm. Sorry, to be personally armed with a firearm. Well, the thing that concerns me some is we're signing all this California law, and yet this is on a habeas corpus issue, and our question is sufficiency of the evidence. Do we look at it from the sufficiency of the evidence under a federal standard or under California's standard or something else? The standard we look to is that enunciated in Jackson v. Virginia, the Supreme Court's landmark case in 1979 that refers to the requirement, the fundamental requirement, the due process requires the government to show beyond a reasonable doubt each of the elements of the offense. Now, when you get to what are those elements, then you look to state law, and that's what the respondent has argued. You must look to state law to see what those elements are. So is the narrow focus here whether the California Court of Appeals determination that these facts, which we've already discussed, satisfy the personally armed element, is that what we're focusing on? Yes. Okay. It is. And how wrong does that have to be for us to say it was wrong? It is contrary to ‑‑ it is an unreasonable application of the Supreme Court's decision in Jackson v. Virginia. That each element has to be proved. Yes. Okay. And if you ‑‑ The Court of Appeals rejected the trial judge's statement that the paddle was sufficient. No, Your Honor. The respondent has disavowed that the Court of Appeal relied on the paddle as substantial evidence to support the verdict. Okay. The Court of Appeal just cites the paddle. It miscites the evidence by saying it said wicked, and it didn't cite what the paddle actually said, which was wicked in every way every day. Okay. And one more point for Judge Hawkins. You talked about the difference between the Federal and the State. We cite Federal cases in our reply brief that discuss evidence that's much more sufficient than was shown here. Those are Federal sentencing guidelines? Those are Federal sentencing guidelines. And we do not contest that there was our controlling, but we cite those cases to show how the courts can draw inferences and what inferences are reasonable to be drawn and what are not. And in one of those Federal cases, we had the defendant who resided in the house and was still not found liable for the Federal sentencing guideline enhancement. If there are no other questions, I'd like to reserve the remainder of my time. May it please the Court. I'm Charles Fennessy, Deputy Attorney General, representing the State of California. Notwithstanding the protestations of Petitioner, the Court of Appeal stated that having reviewed the entire record, that there was evidence of solid, credible value to support the finding of the jury. And what they said with particularity was that obviously the jury had accepted prosecution's theory that defenders were participating in a joint enterprise. Is that similar to the Pinkerton Federal doctrine? I am not certain that it comports in every respect, Your Honor. But it contemplates that they each had control over the drugs and the guns. And, in fact, there was significant evidence, going back through the record, other than the paddle, which was one piece of evidence that was contemplated. And, with your permission, both the prosecutor and the defense counsel for the individual, O'Brien, who was the lessee of the premises, in their arguments characterized her as sort of a facilitator, who was a cocaine addict, seven months pregnant, with two children, who often left the premises when the other individuals were there selling drugs. And she did this in order to receive part of the drugs to feed her own habit. What does this have to do with whether this defendant was personally armed in connection? It has to do with . . . Can I finish my question? Yeah. Personally armed in connection with the offense. It relates to what the relation of the individuals were in terms of who possessed the drugs and who possessed the weapons. We have this individual who has been characterized thusly. She testified herself that she was often out of the house, that she was pregnant, all of these things. And yet there were four weapons, three of them loaded, under her bed. You're, Mr. Porter, correct in saying that there's sort of an ascending level of enhancement under this statute? Under this statute, 1202 . . . Can we start with a yes or no? I'm sorry. Do you agree with Mr. Porter that there are subsections in this enhancement statute . . . Yes. . . . and they sort of increase the exposure based on how closely connected the individual is to the firearm? Not necessarily, Your Honor. Well, tell me about the first enhancement, the one year. What do you have to show for that? I'm sorry, Your Honor. I have the statute. Do you have it? Can you show it to your opponent? He may have it. The first subsection provides that any person who is armed with a firearm to commission an attempt to commission a felony shall, upon conviction of a felony, attempt a felony in addition to consecutive to the other punishments . . . . . . the punishment in additional term of one year. Is that the one that permits vicarious liability? This one says that . . . There's one that says the additional term shall apply to any person who is the principal in commission or attempts to commission a felony if one or more of the principals is armed. So it is a vicarious liability. So this is a vicarious liability if you're not personally armed, you get one year. If you're personally armed, there's no vicarious liability and you get five years. Your Honor, if I may, the subsection pertains to a combination of actual arming and the commission of some subsets of the Health and Safety Code. In other words, there has to be a drug violation in combination with the possession of the firearm. Well, that's clearly present here. I was just wondering if these the exposure, enhancement exposure, seems to go up the more closely. Well, I think that that subsection is clearly distinguishable because . . . Can I finish my question? I'm sorry. May I finish my question? Of course. The enhancements seem to increase in exposure in terms of number of years based on the proximity of the individual to actual possession of the weapon. But there would be no question, for example, of when the officers came in the house and Graham had a .45 in his hand that he would be subject to the five-year enhancement, right? Absolutely. And if he was . . . If he was also convicted of the drug offense, yes, Your Honor. Yes, and if he were sitting on it. Yes, Your Honor. Or if it was hidden under the couch he was sitting on. Or if it was found where it was found and his fingerprints were on it. Yes, Your Honor. Which is, as I understand it, not present in this case. Correct, Your Honor. Okay. Okay. Thank you. There are, however, multiple indications that the . . . What are they other than the paddle? Sorry? What are the multiple indications or proof beyond a reasonable doubt, you should say, rather, beyond the paddle? In the eyes of the Court of Appeal, the fact that the enterprise theory was presented, that it was characterized as these individuals were there to sell drugs and in consideration of allowing them to use her residence, Ephraim, who was often not on the premises, received a certain quantity of drugs. According to both Ephraim's attorney and the prosecutor, the drugs and the guns were brought to the premises by these individuals who were selling the drugs. She testified that on multiple occasions she wasn't there. When she was asked whether her friends came in when she wasn't there, she said sometimes. When she was asked whether they used the bathroom in the master bedroom, she said they did, that they needed to go through her master bedroom to gain access to the bathroom. There were multiple indications that she left these individuals on the premises when she wasn't there, that they were selling drugs. Didn't she say that she had never seen Wicked go into her room? She did, in fact, say, when asked, that she hadn't remembered saying specifically that he had gone into the room, but she did, and I can give you the references, say that on the day she was arrested, she had left the home, and there were four individuals there, RTE 866, and that he was one of the individuals who was there when she left the home and then came back. She said. But there was nobody there since he was in the home. Right. He was arrested. Right. But when he was in the bedroom. I mean, how would she know whether he used the bedroom? Absolutely right. How would she know? And it was 15 feet from where he was sitting on the couch. And she did say that. Everybody connected with the drug ring sitting on the couch, because they're a member of the ring, knows the guns in the bedroom. It was the suggestion that given her conduct, that she was not in control of this enterprise that was being conducted in her own household, that she was allowing her residence to be used, and she was receiving drugs in exchange for the use of her residence. And one of the guns had a thumbprint on it from one of the other co-defendants. So it was clear that someone else other than Ephraim, who was the lessee, had access to guns. Who does that make personally armed, the fact that somebody's thumbprints are on it? If it was a reasonable inference that it was a joint enterprise and each of the participants had access to all of the drugs, it would follow logically that if under the mattress there was both drugs and a gun, that by having access to the drugs, you would of necessity have access to the gun as well. Judge Hawkins, I think I asked your opponent, were they convicted of possessing the drugs in the bedroom? They weren't specifically convicted of. They were convicted of having drugs for sale. I don't believe they were specifically convicted of possession of the quantity on the floor, the quantity under the bed, the quantity that was adjacent to the bed. There was drugs and guns found all over the premises. It was just a generic charge, possession of narcotics. Is it correct that you are not relying on the paddle, then? We are not relying on the paddle. The Court of Appeal did not rely on the paddle. The Court of Appeal, in going through the facts, and we're not suggesting that the paddle is not some evidence, but that the Court of Appeal, in summarizing its rationale, asserted that there was ample evidence for the jurors to conclude that there was a joint enterprise and that all of the participants in the enterprise had access to the drugs and to the guns and there were multiple weapons, and it's inherently unbelievable that this woman, who was seven months pregnant and out of the house most of the time, was in possession of all five of these weapons. When California wants to make you liable for someone else carrying a gun, they can do it in one of two ways. They can say there's vicarious liability, as they do in the statute that gives you one year, or all you have to do is prove you're part of the enterprise. Wait a minute. I'm sorry, Your Honor. All you have to do is prove you're part of the enterprise, and then it's not vicarious liability, you're personally armed. If by being part of the enterprise it means that you have knowledge of the existence of the weapons and access to them, that's correct. All right. Thank you. Thank you, Your Honors. And, of course, we'd ask that you affirm the disposition of the district court. Yes. The Respondent gave a strikingly inaccurate view of the evidence before the trial court. On pages 19 and 8 of the brief, they said, quote, Ephraim told an officer that Petitioner would go into her master bedroom at times, citing Reported Transcript 963. Four times on Reported Transcript 963, Defendant Ephraim denied that she said that, denied, remember, saying that to the police officer. Do you remember the officer asking you a question about does Wicked go into your bedroom? Answer, no. Don't remember him asking you that? Answer, no. You don't remember answering him, yeah, they all do, my kids do, too? Parts of that I remember saying it, that my kids go in there. But you don't remember saying, yeah, they all do? Answer, no. Well, I don't think they're really relying on that, whether there's any evidence that he went in. The theory of the State, as I understand it, is that if there's a drug business being operated from there, there's a gun, somebody in the drug business has his fingerprint on it, so that the gun is for use in connection with the drug business, that all the people there are presumed to have knowledge of the narcotics and of the gun, without showing anything more, that because it's an enterprise and they could have gone in the bedroom. Yes, Your Honor, that's their theory, and they're wrong. I mean, they're clearly wrong. The statute has different methods for liability. Some are vicarious, some are personal. And if there is an epitome of clearly contrary to Federal precedent, this is it. This is a clearly arbitrary reading of the statute if they say that's what it means. So could California say that? Could California say what we mean in this statute is that anybody in an enterprise who's in the same place where the gun is is presumed to have knowledge of the gun, and that's what we mean by personal, Your Honor? Contrary to 200 years of common law, I don't think so, Your Honor. Well, what difference does it make if it's contrary to common law? I mean, they use the term personally armed, and to say to us personally armed means you've been within 100 miles of it. Now, what's unconstitutional about California doing that? We have a lot of bizarre laws in California. We certainly do, Your Honor. Due process. Due process requires that a defendant be on notice of what acts constitute either violations of the law or sentencing enhancements, offenses or sentencing enhancements. And to say that being personally armed, if the firearm was in Nevada and you're in California, is arbitrary and capricious and a violation of the due process clause. We ask that this Court reverse the district court's judgment and order that the writ of habeas corpus be granted. Thank you, counsel. You're welcome. Thank you. The case is argued and submitted.
judges: Reinhardt, Siler, Hawkins